Morrison *et al. v.* The State.

No. 9749.

MORRISON ET AL. *v.* THE STATE.

CRIMINAL LAW.—*Witness.*—*Moral Character.*—Under the revision of 1881, "In all questions affecting the credibility of a witness, his general moral character may be given in evidence." If the defendant becomes a witness, he testifies under the same rules, and may be impeached in the same manner, as other witnesses.

SAME.—*Practice.* — *New Trial.* — *Argument.* — *Statements Dehors the Evidence.*—It is not cause for a new trial that the prosecuting attorney made an illogical argument or a misstatement of the law.

SAME.—If the argument goes beyond the evidence, objection must be made at the time, and the specific grounds of objection stated. None not so stated will be available on appeal.

An objection stated for one purpose will not be available on appeal for another purpose.

Not every transgression beyond the bounds of legal argument will be cause for a new trial.

The proper practice is for the defendant by his counsel to move the court to restrain the prosecutor, or to have withdrawn or corrected any misstatement which has been made.

Interruptions of an argument may be made for the purpose of stating objections and making motions.

SAME.—*Instructions.* — *Presumption of Innocence.* — *Circumstantial Evidence.*—It is not error to refuse to instruct upon impractical propositions of law, though theoretically correct.

SAME.—It is not error to refuse to instruct the jury, that the defendants can not be convicted upon the proof of any circumstances or facts which only raise a presumption of their guilt; or that any presumption

Morrison *et al. v.* The State.

of guilt which may be inferred from circumstances proved is inferior to the legal presumption of innocence.

SAME.—*New Trial.*—No cause for a new trial is available, which was not stated in the motion.

From the Montgomery Circuit Court.

*G. W. Paul* and *J. E. Humphries*, for appellants.

*D. P. Baldwin*, Attorney General, *J. H. Burford*, Prosecuting Attorney, *P. S. Kennedy* and *W. T. Brush*, for the State.

WOODS, J.—The appellants were convicted upon an indictment for petit larceny, and sentenced to the State prison, Michaels for one year, and Morrison for two years. They have assigned error upon the overruling of their motion for a new trial. Of the alleged causes for the motion, the following only have been discussed by their counsel :

1st. The verdict is contrary to the law and the evidence.

2d. The verdict is not sustained by the evidence.

3d. The court erred in admitting evidence concerning the general moral character of the defendant Morrison.

4th. Error of law occurring at the trial, and misconduct of the attorney for the State, in making certain specified remarks in the closing argument, whereby the defendants were prevented from having a fair trial.

The trial was had under the criminal code of 1881, which has the following provisions :

"Sec. 225. The following persons are competent witnesses :

"*First*, All persons who are competent to testify in civil actions. * * *

"*Fourth*, The defendant, to testify in his own behalf, but if the defendant do not testify, his failure to do so shall not be commented upon, or referred to in the argument of the cause, nor commented upon, referred to, or in any manner considered by the jury trying the same ; and it shall be the duty of the court in such case in its charge, to instruct the jury as to their duty under the provisions of this section.

"Sec. 230. In all questions affecting the credibility of a witness, his general moral character may be given in evidence." Acts 1881, pp. 157, 158.

The appellant Morrison availed himself of the privilege of testifying, and thereby made it competent for the State, under the section last quoted, to offer evidence concerning his general moral character. While the general proposition is true, as counsel claim, that the moral character of the accused, in a criminal case, is not in issue, unless he chooses to bring it into question by first offering evidence in support of it (*Fletcher* v. *The State*, 49 Ind. 124, *Knight* v. *The State*, 70 Ind. 375), it has now become the rule, that, if he avails himself of the privilege of testifying, he testifies under the same rules, and may be impeached in the same manner, as other witnesses. *Mershon* v. *The State*, 51 Ind. 14 ; *The State* v. *Beal*, 68 Ind. 345.

This disposes of the third cause stated in the motion for a new trial, and of the principal point of the argument made upon the fourth cause.

There having been evidence concerning the moral character of the defendant Morrison, legally admitted, it was entirely proper for the State's attorney to comment upon it, and to claim that it showed the defendant to be a bad man. It may have been unreasonable and illogical, and in that sense unlawful, for him to argue that bad character was evidence or proof of guilt ; but it is not cause for a new trial that counsel in a case make an illogical argument, or a misstatement of the law. It is objected, however, in this connection, that speaking in the plural, and of both defendants, the attorney of the State said they were bad men, their moral characters are bad, etc., while the proof on the subject was confined to the character of Morrison alone. This point is not developed in the original brief of appellants, but is first distinctly made in the reply to the brief filed for the appellee. The record fails to show an objection in the court

below on this ground. Before the counsel for the appellants interrupted the argument and stated their grounds of objection, the attorney for the State had spoken only of the character of Morrison ; but after the court had properly overruled the objection, and directed the argument to proceed, the attorney did then, among many other things set forth in the bill of exceptions, say the defendants were bad men, their moral characters were bad ; that the jury had a right to consider this as proof of their guilt, etc. In this part of the speech Morrison alone was mentioned by name, and Michaels alluded to, not by name, but only by the use of the word *defendants* and the plural pronouns. After its close, the appellants objected generally to this speech, but stated no specific ground of objection to the whole or any part of it. It is not at all probable that the mind of the jury was diverted from the evidence, or biased against either of the appellants, on account of this part of the argument. If it struck the mind of appellants' counsel as unjust and harmful to their clients, they should, upon the conclusion of the speech, or the objectionable portion of it, have specifically pointed out the ground of exception, namely, that there had been no proof concerning Michaels' character, so that the proper retraction or correction could have been made. The language complained of was not an irremediable wrong, such as would have been a reference by the attorney to the fact that one of the defendants had not testified. Such an allusion is expressly forbidden by statute, and the wrong can not, it has been held, be cured by an instruction to the jury to disregard it. *Long* v. *The State*, 56 Ind. 182 ; *Knight* v. *The State*, 70 Ind. 375. But not every trangression of counsel beyond the bounds of strictly proper discussion can be deemed a fatal and incurable error ; and, whatever its character, it can not be made available unless pointed out to the lower court, and the ground of objection specifically stated ; and the fact that the court may have requested or commanded

counsel not again to interrupt the argument is no excuse for their failure to comply with this rule of practice.

In this connection, it may be noted that the appellants have endeavored to make a point upon the fact that the court refused them the right to reply to a part of the closing argument made in behalf of the State, claiming that new points, not suggested in the opening argument, had been advanced. The record, however, does not show that all the points of the closing argument were not presented in the opening speech ; and, if the fact were shown, it would not be available, because not stated among the causes for a new trial.

The next inquiry is, whether the court erred in refusing to give the sixth instruction asked by the appellants.   It is as follows :

"6th.  The law presumes the defendants innocent until the contrary is proved.  This presumption is expressly given by the statute.    It is the most favored and powerful legal presumption in the criminal law, and overrides all other counter legal presumptions ; that is, you can not convict the defendants upon the proof of any circumstances or facts which only raise a presumption of their guilt, from the fact that any presumption of their guilt which may be inferred from circumstances proved, or attempted to be proved, is inferior to the presumption of innocence which the law gives in favor of the defendants.    So the evidence must be sufficient to convince each of your minds of the fact of the guilt of the defendants beyond a reasonable doubt, exclusive of any mere presumption of guilt which may be raised by proof of circumstances."

Passing so much of the instruction as attempts a comparison of legal presumptions, which the court may well have refused as theoretical and impractical, we do not assent to the proposition, that any presumption of guilt which may be inferred from circumstances proved is inferior to the legal presumption of innocence ; or to the equivalent proposition, that the

evidence must be sufficient to convince each juror of the guilt of the defendants, beyond a reasonable doubt, exclusive of any mere presumption of guilt which may be raised by proof of circumstances.    If this be the law, there can be no con-- viction upon circumstantial evidence, if indeed upon any kind of human testimony.    In a strict sense, guilt is seldom,. if ever, directly proved, because it rarely consists solely in the act done, but is in part made up of the motive or intent with which it was done, and therefore must be inferred from the facts proven, or supposed to be proven; and, if a con- viction is to be had at all, it must be because the presump- tion, or, to speak more properly, the inference drawn from facts and circumstances may be made superior to the pre- sumption of innocence.    The court did plainly instruct in reference to the presumption of innocence, and that, in or- der to convict, the evidence must establish every material element of the charge beyond reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence.

The evidence in the case we have examined carefully. The criticisms made upon it do not impair or reach the more important and convincing parts, which seem sufficiently to warrant the conclusion which the jury adopted.    The judge who presided at the trial, and saw and heard the witnesses, was satisfied with the verdict, and we find in the record no- sufficient cause for setting aside his decision.

Judgment affirmed, with costs.

## On Petition for a Rehearing.

Woods, J.—It is insisted that we were mistaken in holding that the appellants had not saved their exception to the clos- ing argument of the State's attorney.

The portion of our opinion which is complained of does not proceed on the theory, nor contain the statement, that an exception was not taken.    We did and do say that the grounds of objection were not indicated to the circuit court.

at the time the exception was taken. That there may be no mistake of our meaning, we give at length so much of the record as is claimed to be relevant. On this subject the bill of exceptions shows that, in making the closing argument, the counsel for the State, "in a very forcible manner, said: 'When Morrison and Michaels were arrested, at Hillsborough, they did not make any explanation. They had no explanation to make. They knew they had stolen Taylor's wheat, and they have trumped up their defence since they were arrested. We have shown that James Morrison is a very bad man, or man of bad moral character, and he has not produced one witness to prove he is a man of good character. The most powerful defence a man can make is to show he is a man of good character. There is not a man on earth that will swear James Morrison is a man of good morals, and it leaves it a conclusive circumstance to prove that he stole the wheat. He is a bad man and a liar; his evidence is worth nothing, and you are not justified in placing any reliance upon it; and it is conclusively proven and virtually admitted that James Morrison is a bad man, and a man of bad moral character. This is a circumstance, with the other circumstances of the case, you have to consider whether the defendants are guilty or not.' The defendants then each objected to the argument, because it was not fair or legitimate, and because the defendants had not put their character for morality or honesty in issue, and because counsel had no right to argue that it was a circumstance to prove guilt, but the court overruled the objection, to which ruling the defendants each excepted, and the court then said to the speaker, 'Go on with your argument,' and then to counsel for defendants, 'I don't want any more interruptions of counsel while speaking,' to which the defendants each then excepted. The counsel for the State then, in a vehement manner, said: 'They are bad men; they took the wheat; we have proved their moral characters are bad; they are

men of bad character, and that is a fact you can consider to prove their guilt. They left home before daylight; they took wheat to Hillsborough when they could have got more at Crawfordsville, and the fact that they are bad men, and men of bad character, proves they stole the wheat. They did not try to rebut the circumstance that they are men of bad characters. Morrison is a confessed bad man, because he did not try to prove he was a man of good character, and that is a powerful circumstance to prove his guilt. There has no one but their nieces testified they took the wheat from home, and they had the most powerful induce- ment in the world to swear falsely. I don't want to say anything about the poor, frail women, but you all know the power a man exercises over a woman, and a frail woman, in the hands of a bad man, is like clay in the hands of a pot- ter, and Morrison is a confessed bad man, a man of bad moral character. If he had not been a man of bad moral character, he could have brought witnesses to establish his character, and it would have been the most powerful defence he could make. You have a right to take into consideration that they are of bad character. A liar might tell the truth, but it is not likely that a bad man would tell the truth. A good man would hardly tell the truth, where he was guilty of a crime. His testimony would be warped, and a bad man would not tell the truth at all, where it was not to his interest to do so.' To all of which the defendants each ex- cepted at the time, although the court told them to keep still.

"And be it further remembered, that when said Kennedy quit speaking the counsel told the court that, as the counsel for the State had not made the point that they relied upon the fact of having tried to show that defendants were men of bad moral character, to prove their guilt; it was a new proposition laid down by Mr. Kennedy, and he claimed the right to answer the point; that it was unfair and was calculated to injure the defence of the defendants; that

they had not put their character for morality in issue, and counsel had no right to insist it was a circumstance to prove their guilt, and they wanted to answer, but the court said, 'The argument will quit right here,' to all of which the defendants at the time excepted.''

The reasons for this exception to the refusal of the court to allow a reply to the closing argument for the State are sufficiently stated, but nevertheless the exception presents no question, because, as was stated in the principal opinion, it was not made a cause for the motion for a new trial, and because the bill of exceptions does not show that the alleged new point or argument was in fact new.

But counsel now contend, if we do not misunderstand their brief, that the reasons given in support of their motion for leave to close the argument, ought to be regarded as a proper statement of their grounds of objection in connection with their exception to the speech itself. This is not permissible. The reasons for each objection or exception must be specified at the time, and with reference to the end then sought to be attained. Whether the speech was in itself objectionable, because it went beyond the evidence, is one thing, and whether it embraced points not disclosed in the opening, is another thing.

But if this rule were relaxed, and the appellants were allowed the benefit of all that is claimed for them, it would still be true that the specific matter now complained of, namely, that the attorney of the State ''argued'' that both defendants were men of bad character, when the evidence in that respect was confined to the character of one of them, was not made the ground of objection on the trial, nor indeed in the first instance in this court.

If, however, the question were in the record, it would not necessarily follow that the judgment should be reversed. If, for every transgression of the prosecuting attorney beyond the bounds of logical or strictly legal argument, the

defendant could claim a new trial, few verdicts could stand, and the administration of criminal justice would become impracticable. The proper course, ordinarily, is for the defendant, by his counsel, to move the court to restrain the attorney for the State from transgressing; and, if something has already been said to the defendant's probable injury, to move to have it retracted by the speaker or corrected by the court.

When improper evidence has been permitted to go to the jury, the court may withdraw it, and so correct the error; and if the impression of sworn testimony may be so removed, and such is the theory practiced upon, it would be unreasonable to say that an improper speech of the prosecuting attorney could not be withdrawn or corrected in the same way. There must be some reliance upon the good sense and fair-mindedness of juries. In this case, the court gave appropriate instructions in reference to the rules of evidence and the proof necessary to convict, and, at the instance of the defendants, gave a special instruction to the effect that the law presumed each defendant to be a man of good character, and that he was honest, and would not steal as charged.

It is the unquestionable right of counsel for a defendant, to interrupt an improper argument which is being made against him, for the purpose of stating his objections, and moving the court to take proper action; and, if such interruption is made considerately and in proper temper, the court has no right to rebuke the counsel therefor, nor to forbid a repetition of the interruption. Whose the fault was for the somewhat unseemly part of the record made in this case, we are not required to decide. So long as the record is not full and specific in reference to the facts, the presumptions are in favor of the court.

Petition overruled, with costs.